No. 12-17772

---

**In the**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

KIM HEWTON-NASTROM, et al.,

Plaintiffs-Appellants,

v.

NEW CENTURY MORTGAGE CORPORATION, et al.
Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of California
Hon. Magistrate Judge Dennis L. Beck

---

**ANSWERING BRIEF**

---

BRYAN CAVE LLP
Daniel Rockey
Joseph J. Poppen
560 Mission Street, 25th Floor
San Francisco, California  94105
(415) 675-3400

Attorneys for Appellees JPMORGAN CHASE BANK, N.A., individually and
as successor by merger to CHASE HOME FINANCE LLC.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.; FEDERAL HOME
LOAN MORTGAGE CORPORATION; and DEUTSCHE BANK
NATIONAL TRUST COMPANY

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee JPMorgan Chase Bank, N.A. is a national banking association organized under the National Bank Act. JPMorgan Chase Bank, N.A. is 100% owned by JPMorgan Chase & Company, a publicly owned corporation listed on the New York Stock Exchange (symbol "JPM"). JPMorgan Chase & Co. has no parent company, and no publicly-held company owns more than 10% of JPMorgan Chase & Co.'s shares.

Appellee Mortgage Electronic Registration Systems, Inc. is a wholly-owned subsidiary of MERSCORP, Inc., a private company. Federal National Mortgage Association "Fannie Mae," Federal Home Loan Mortgage Corporation, and the Mortgage Bankers Association of America each own 10% or more of the stock of MERSCORP, Inc.

Appellee Deutsche Bank National Trust Company is a wholly-owned subsidiary of Deutsche Bank, AG, a German corporation listed on the New York Stock Exchange (symbol "DB"). No other publicly held corporation owns 10% or more of Deutsche Bank National Trust Company.

Appellee Federal Home Loan Mortgage Corporation ("Freddie Mac") is a United States corporation chartered by an Act of Congress, organized and existing under 12 U.S.C. § 1451, *et seq*. No publicly-held company owns more than 10% of Freddie Mac.

-i-

**TABLE OF CONTENTS**

Page

I.     STATEMENT OF JURISDICTION................................................................1

II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................2

III.   STATEMENT OF THE CASE ....................................................................2

IV.    COURSE OF PROCEEDINGS AND DISPOSITION....................................4

V.     STATEMENT OF FACTS ........................................................................6

VI.    STANDARD OF REVIEW ........................................................................9

VII.   SUMMARY OF THE ARGUMENT ..........................................................10

VIII.  LAW AND ARGUMENT ........................................................................12

       A. The District Court Did Not Err in Granting Appellees' Motion
          to Dismiss the First Amended Complaint. .................................12

       1.   The First Amended Complaint Failed to State a Fraud
            Cause of Action...............................................................12

            a.   Appellants Stated No Factual Allegations Against
                 Appellees Deutsche Bank, Freddie Mac, or MERS..................13

            b.   Appellants Alleged No Facts That Support A Fraud
                 Claim Against Chase...........................................................13

                 i.    Appellants Failed To Allege Any Actionable
                       Misrepresentation. ...........................................14

                       (1)  Jackson Statement ...................................14

                       (2)  Serrano Statement ...................................17

                       (3)  Statement By An Unidentified Individual ..............19

                       (4)  The Interest Rate Error............................20

                 ii.   Appellants Did Not Allege Any Facts That Support
                       The Elements Of Reliance Or Resulting Damages............20

                       (1)  The Allegations Related to EMR Failed to Establish
                            Reliance or Resulting Damages. ..............................21

-ii-

(2)     The Allegations Related to the Retention of the Foreclosure Defense Law Firm Failed to Establish Reliance or Resulting Damages. ...........................22

iii.   Appellants' Cited Authority Does Not Support Their Fraud Cause of Action..........................................................23

2.   The First Amended Complaint Failed to State a Civil Conspiracy Cause of Action. ...............................................24

3.   The First Amended Complaint Failed to State a Negligence Claim..........................................................................26

   a.   Appellants Stated No Facts Against Deutsche Bank, Freddie Mac, or MERS in Support of the Negligence Claim. ...............................................................................26

   b.   No Allegation of Fact Established That Chase Owed a Duty of Care. ................................................................27

   c.   Appellants Waived the Negligence Claim by Failing to Raise Any Argument on the Elements of Breach, Causation or Damages....................................................31

   d.   No Allegations of Fact Establish Chase Breached a Duty of Care. ................................................................32

   e.   No Allegations of Fact Establish Appellants Sustained Damages as a Result of a Breach of a Duty. ...............................32

4.   The First Amended Complaint Did Not State a Cause of Action for Promissory Estoppel.........................................33

   a.   Appellants Failed to Plead Facts Establishing a Clear and Unambiguous Promise.........................................33

   b.   No Facts Showed Appellees Breached a Clear and Unambiguous Promise. ...........................................35

   c.   No Facts Established Actual, Foreseeable and Reasonable Reliance Caused Appellants Damage.....................36

5.   The First Amended Complaint Does Not State a Cause of Action for Violation of Business and Professions Code Section 17200.....................................................................38

-iii-

a.  Appellants Raise No Argument Showing a Business Practice that Violated Section 17200 and the Claim Should be Deemed Waived. .....................................39

b.  No Allegations Established A Violation of Section 17200. .......................................................................40

    i.   No Allegation Established an Underlying Violation of Statute................................................................40

    ii.  No Allegation Showed Appellees Engaged in an "Unfair" Business Practice...................................40

    iii. No Allegation Showed Appellees Engaged in a "Fraudulent" Business Practice............................41

c.  No Allegations of Fact Establish that Appellants Lost Money or Property as a Result of an Unfairly Competitive Business Practice. ................................41

B.  Appellants Fail to Show the District Court Abused Its Discretion in Denying Further Leave to Amend......................................42

C.  The District Court Did Not Abuse Its Discretion in Denying Appellants' Ex Parte Request to File an Untimely Opposition. ..............43

    1.  The District Court Properly Applied the *Pioneer* Factors and Found That Appellants Failed to Demonstrate Excusable Neglect...................................................44

        a.  The Cause For Delay Factor Weighs Heavily Against a Finding of Excusable Neglect As Appellants Failed to Explain Their Failure to File an Opposition Prior to the Hearing. ..................................................44

            i.   Appellants Offered No Explanation Why the Seven Individuals Who Received Notice Failed to Properly Calendar the Motion.......................................45

            ii.  Appellants Fail to Explain Why Mr. Montgomery Failed to Add His E-Mail Address to the Electronic Notice List. .......................................46

            iii. Appellants' Jointly Filed Case Management Statement Showed That They Were In Fact Aware of the September 28, 2012 Motion to Dismiss Hearing.........46

-iv-

iv.    Appellants' Failure to Promptly Request Relief. ...............47

b.    The Record Did Not Establish Good Faith. .............................47

c.    The Length of the Delay and Its Impact on the Proceedings.................................................................................48

d.    Appellants Fail to Show They Sustained Actual Prejudice From the Denial of Their Ex Parte Application. ...................................................................................48

e.    Danger of Prejudice to Appellees............................................49

D.  In the Alternative, the District Court's Denial of Appellants' *Ex Parte* Application Was Not Prejudicial...................................................49

CONCLUSION .................................................................................................51

CERTIFICATE OF COMPLIANCE.................................................................52

STATEMENT OF RELATED CASES ..............................................................53

CERTIFICATE OF SERVICE ..........................................................................54

–v–

# TABLE OF AUTHORITIES

Page

**Cases**

*Aceves v. U.S. Bank, N.A.*,
   192 Cal. App. 4th 218 (2011) .................................................................. 36, 37, 38

*Advanced Choices, Inc. v. State Dept. of Health Services*
   182 Cal.App.4th 1661 (2010)................................................................... 36, 37

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
   966 F.2d 443 (9th Cir. 1992)................................................................... 33, 34

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal.4th 503 (1994) ............................................................................ 24, 25, 26

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ....................................................................... 9, 16, 20, 26

*Avila v. Wells Fargo Bank*
   2012 WL 2953117 (N.D.Cal.2012) ........................................................... 16, 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................9,25

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007) ...................................................................38

*Bevard v. Farmers Ins. Exch.*,
   127 F.3d 1147 (9th Cir. 1997) ...................................................................23

*Bowles v. Reade*,
   198 F.3d 752 (9th Cir. 1999)................................................................... 10, 42

*Caldo v. Owens-Illinois, Inc.*,
   125 Cal.App.4th 513 (2004)...................................................................... 20, 22, 23

*Carpenter v. Bank of Am., N.A.*,
   2013 WL 28772 (S.D.Cal.2013) ................................................................ 28, 32

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................................ 38, 39

*Committee for Idaho's High Desert, Inc. v. Yost*,
   92 F.3d 814 (9th Cir. 1996)......................................................................44

*Conrad v. Bank of America*
   45 Cal.App.4th 133 (1996) ............................................................ 15, 16, 18, 23

*Davis v. Ford Motor Credit Co.*,
   179 Cal.App.4th 581 (2009) ................................................................. 39

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ........................................................ 38, 39, 40

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ......................................................... 42, 43

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ............................................................... 12

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*
   211 Cal. App. 4th 230 (2012) ............................................................... 22

*Eghtesadi v. Wells Fargo Bank, N.A.*,
   2013 WL 1498999 (S.D.Cal.2013) .......................................................... 28

*Feldman v. Allstate Ins. Co.*,
   322 F.3d 660 (9th Cir. 2003) ............................................................... 47

*Hamilton v. Greenwich Investors XXVI, LLC*,
   195 Cal.App.4th 1602 (2011) ......................................................... 13, 27

*Harman v. Apfel*,
   211 F.3d 1172 (9th Cir. 2000) ............................................................. 42

*Hayduk v. Lanna*,
   775 F.2d 441 (1st Cir. 1985) ............................................................... 25

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ............................................................. 41

*Jackson v. Southern California Gas Co.*,
   881 F.2d 638 (9th Cir. 1989) ............................................................... 10

*Jolley v. Chase Home Finance, LLC*,
   213 Cal.App.4th 872 (2013) ......................................................... 29, 30, 31

*Jones v. CitiMortgage, Inc.*,
   2013 WL 1704304 (E.D.Cal.2013) .......................................................... 35

*Karimi v. Wells Fargo*,
   2011 WL 10653746 (C.D.Cal.2011) ......................................................... 28

-vii-

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...............................................................12

*Kidron v. Movie Acquisition Corp.*,
  *40 Cal. App. 4th 1571 (1995)*...................................................... 24, 25

*Kruse v. Bank of America*,
  202 Cal.App.3d 38 (1988)....................................................................15

*Kwikset Corp. v. Superior Court*,
  51 Cal.4th 310 (2011) .........................................................................41

*Kyle v. Campbell Soup Co.*,
  28 F.3d 928 (9th Cir. 1994)......................................................... 10, 44

*Laks v. Coast Fed. Savings & Loan Ass'n*,
  60 Cal.App. 3d 885 (1976)........................................................ 33, 34, 37

*Lange v. TIG Insurance Company*,
  68 Cal.App. 4th 1179 (1998)......................................................... 33, 34

*Lemoge v. United States*,
  587 F.3d 1188 (9th Cir. 2009)..................................................... 44, 48

*Louis v. Nailtiques Cosmetic Corp.*,
  423 F. App'x 711 (9th Cir. 2011) .......................................................16

*Lovejoy v. AT&T Corp.*,
  92 Cal.App.4th 85 (2001).....................................................................15

*Ludwig v. Astrue*,
  681 F.3d 1047 (9th Cir. 2012)..................................................... 49, 50

*Mabry v. Superior Court*,
  185 Cal.App.4th 208 (2010)..................................................................13

*Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ..............................................................17

*Melegrito v. CitiMortgage Inc.*,
  2011 WL 2197534 (N.D.Cal.2011) .......................................................35

*Mir v. Fosburg*,
  646 F.2d 342 (9th Cir. 1980)................................................................42

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989)................................................................13

*Morgan v. U.S. Bank Nat. Ass'n*,
   2013 WL 684932  (N.D.Cal.2013) ....................................................28

*Mulato v. WMC Mortg. Corp.,*
   2009 WL 3561536  (N.D.Cal.2009) ................................................28

*Neu-Visions Sports v. Soren/McAdam/Bartells*,
   86 Cal.App.4th 303 (2000) ...........................................................16

*Nymark v. Heart Fed. Sav. & Loan Assn.,*
   231 Cal. App. 3d 1089 (1991) ........................................ 26, 27, 29, 31

*Oaks Management Corp. v. Superior Court,*
   145 Cal.App.4th 453 (2007) ..........................................................27

*Olsen v. Breeze*,
   48 Cal.App.4th 608 (1996)......................................................... 39, 41

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ......................................................39

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993) .............................................................. 44, 45, 48

*Richard P. v. Vista Del Mar Child Care Serv.*,
   106 Cal.App.3d 860 (1980)...................................................... 16, 18, 19

*Roussel v. Wells Fargo Bank*,
   2013 WL 146370 (N.D.Cal.2013) ...................................................28

*Scripps Clinic v. Superior Court*,
   108 Cal.App.4th 917 (2003) ....................................................... 38, 39, 40

*Seacrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*,
   167 Cal.App.4th 544 (2008)...................................................... 34,35, 43

*Shepherd v. American Home Mort g. Servs., Inc.,*
   2009 WL 4505925  (E.D.Cal.2009)................................................28

*Small v. Fritz Companies, Inc.*,
   30 Cal.4th 167 (2003) ............................................................... 12, 20

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001).........................................................24

*Sullivan v. JP Morgan Chase Bank, NA*,
   725 F.Supp.2d 1087 (E.D.Cal.2010)........................................... 27, 28

-ix-

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007).......................................................... 13, 19

*Tenzer v. Superscope, Inc.*,
    39 Cal.3d 18 (1985) .................................................................15

*Thompson v. Davis*,
    295 F.3d 890 (9th Cir. 2002)....................................................9

*Truong v. Nguyen*,
    156 Cal. App. 4th 865 (2007) .................................................. 26, 32

*U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .................................................. 17, 18

*US Ecology, Inc. v. State*,
    129 Cal.App.4th 887 (2005) ....................................................35

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................25

*Wagner v. Benson*,
    101 Cal.App.3d 27 (1980).......................................................27

*Walters v. Fidelity Mortg. Of CA*,
    730 F.Supp.2d 1185 (E.D.Cal.2010).......................................26

*West v. JPMorgan*,
    214 Cal.App.4th 780 (2013) ................................................... 23, 24, 38

*Wilhelm v. Pray, Price, Williams & Russell*,
    186 Cal.App.3d 1324 (1986)................................................... 21, 22, 23

## Statutes

Bus. & Prof. Code, § 17200 ........................................................... passim

Cal. Code Civ. Proc. § 1021 ....................................................22

Cal. Code Civ. Proc. § 1033.5(a)(10) .................................................22

Cal. Code Civ. Proc. § 335.1 .....................................................32

Cal. Code Civ. Proc. § 339 .......................................................35

## Rules

E.D Cal. R. 135(g) ...........................................................46

E.D. Cal. R. 230(c)...........................................................5

Fed. R. Civ. P. 12(b)(6)....................................................................... 4, 9, 47

Fed. R. Civ. P. 6(b) ................................................................................ passim

Fed. R. Civ. P. 6(b)(1)(B) ..........................................................................43

Fed. R. Civ. P. 60(b) ..............................................................................5, 6

Fed. R. Civ. P. 9(b) ...................................................................................12

SF01DOCS\150819

# I.    **STATEMENT OF JURISDICTION**

Appellees JPMorgan Chase Bank, N.A., individually and as successor by merger to Chase Home Finance LLC ("Chase"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Deutsche Bank National Trust Company ("Deutsche Bank") (collectively, "Appellees") submit the following statement of jurisdiction.

The district court had jurisdiction over the federal claims of Appellants Jamey L. Nastrom and Kim M. Hewton-Nastrom ("Appellants") under 28 U.S.C. § 1331, including their federal claim arising under 18 U.S.C. § 1961 *et seq.*, as plead in Appellants' initial complaint.

The district court had supplemental jurisdiction over Appellants' state-law claims pursuant to 28 U.S.C. § 1367(a).

The district court entered a final judgment dismissing all of Appellants' claims on November 14, 2012.  Appellants filed a notice of appeal of the judgment on December 14, 2012.  The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1).

///

1

## II.   <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

1.     Did the trial court err when it determined that Appellants had failed to allege facts sufficient to support the elements of Appellants' claims for fraud, civil conspiracy, negligence, promissory estoppel and violation of California Business and Professions Code section 17200?

2.     Did the district court abuse its discretion by denying further leave to amend as to the above state-law claims after having permitted Appellants a prior opportunity to amend?

3.     Did the district court abuse its discretion in denying Appellants' October 10, 2012 *ex parte* application to file an untimely opposition to the motion to dismiss taken under submission on September 26, 2012 despite the portions of the record that show their counsel was aware of the pending motion and failed to file an opposition?

## III.   <u>STATEMENT OF THE CASE</u>

This case arises from Appellants' inability to accept that they could not get a modification of their loan on the terms that they desired.  Appellants' First Amended Complaint, the operative complaint here, asserted claims for fraud, conspiracy, negligence, promissory estoppel, and violation of California Business and Professions Code § 17200 ("Section 17200").  Appellants acknowledge that they were offered at least two modifications, both of which they declined.  They

2

claim that they were wrongfully denied a modification on more favorable terms.
Appellees moved to dismiss all claims on the pleadings.  Appellants did not oppose
the motion, which was taken under submission on September 26, 2012.

A full two weeks later, Appellants filed an *ex parte* application for leave to
file an untimely opposition to Appellees' motion to dismiss, citing confusion
within counsel's office as grounds for relief.  After thorough review of the motion
papers, the district court found that Appellants had made no showing of excusable
neglect.  Among other things, the record showed that Appellants' attorneys knew
of the motion and the hearing date prior to the opposition filing deadline, and that
they delayed in making their *ex parte* request for an additional fourteen days after
the court took the matter under submission.  The court thus denied the *ex parte*
request.

The court then issued a detailed thirteen-page order granting the motion to
dismiss, analyzing each claim under the applicable law, and denied further leave to
amend.

///

## IV.  <u>COURSE OF PROCEEDINGS AND DISPOSITION</u>

Appellants filed their initial complaint on November 22, 2011.  (Docket No. 1.)  On February 13, 2012, Appellees filed a motion to dismiss under Federal Rule of Civil Procedure[1] 12(b)(6).  (Docket Nos. 12; 22.)  Appellants opposed the motion, and Appellees timely replied.  (Docket Nos. 36; 39.)

On May 25, 2012, the district court granted the motion with sixty days' leave to amend.  (Supplemental Excepts of Record ("SER") 1-11.)  Appellants amended, filing their First Amended Complaint on August 6, 2012.  (ER 201-223.)

On August 23, 2012, Appellees moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(6).  (ER 180-200.)  The hearing on the motion was set for September 28, 2012.  (*Id*.)

On September 14, 2012, the due date of Appellants' opposition, Appellants filed a case management conference statement acknowledging the motion and the September 28, 2012 hearing date.  (SER 16 lines 11-14.)  However, they failed to file any opposition to the motion.  On September 26, 2012, the court issued an order vacating the September 28, 2012 hearing and took the motion under

---

[1] All further statutory references are to the Federal Rules of Civil Procedure unless otherwise noted.

SF01DOCS\150819

submission pursuant to Eastern District of California Local Rule 230(c).  (Docket No. 50.)

It was not until October 10, 2012, two weeks after the matter was submitted for decision and two weeks after Appellants' alleged discovery of their oversight, that they filed an *ex parte* application under Rule 6(b) seeking leave to file an untimely opposition based principally on their claim that they were not aware of the motion prior to September 26, 2012.  (ER 74-81.)

On October 15, 2012, the court issued an order denying the *ex parte* application based on the finding that Appellants had failed to show excusable neglect.  (ER 65-69.)   The court found that, among other things:

- Appellants' September 14, 2012 Case Management Statement expressly referred to the motion to dismiss and the September 26, 2012 hearing date;

- Even after the date on which Appellants admit they were aware of the motion, they delayed an additional fourteen days before seeking relief;

- The matter was within Appellants' counsel's control.

On November 14, 2012, the court issued an order granting Appellees' motion to dismiss without further leave to amend.  (ER 51-64.)  The court also entered its judgment of dismissal on that date.  (ER 50.)

On November 26, 2012, Appellants filed a motion to vacate the judgment under Rule 60(b).  (ER 19-25.)  Their motion re-asserted the same arguments from

5

their *ex parte* application that had been ruled on previously. (*Id.*; *see also* Docket No. 70; ER 74-81.)  Appellees filed opposition to the motion.  (Docket No. 65.)

Appellants filed a notice of appeal of the judgment on December 14, 2012. (Docket No. 59.)

On January 22, 2013, the court issued an order denying the motion and vacating the hearing.  (SER 20-30.)

Appellants filed a second notice of appeal on February 19, 2013.  (ER 12.)

## V.     STATEMENT OF FACTS[2]

On July 2, 2007, Appellants obtained a $195,000 refinance loan from Chase (hereinafter the "Loan").  (Opening Brief ("OB") at p. 2.)  The Loan was secured by a deed of trust recorded against the real property at 103 C Street, Empire, California (the "Property") on July 11, 2007.  (ER 149-164.)

Appellants first contacted Chase about a possible modification of the Loan terms in April 2009.  (ER 208 ¶ 32.)  Appellants allege that a Chase representative "indicated that Plaintiffs fit the guidelines for participation in the Home Affordable

---

[2] Because the judgment was entered on the pleadings, Appellees recite the alleged facts for present purposes only.  Appellees do not concede that the allegations are true.

Modification Program ("HAMP") program." (*Id.*)  Appellants subsequently submitted a loan modification application to Chase.  (*Id.* at ¶ 33.)

On July 28, 2009, Chase sent Appellants a letter stating that they "had been denied modification, as their 'property equity exceeds [the] program guidelines.'" (ER 209 ¶ 39.)  A month later, on August 22, 2009, Chase sent Appellants another letter stating that they were not qualified for a modification under HAMP for the additional reason that their income "exceeded the maximum for the HAMP lending program.'" (ER 209 ¶ 40.)

For reasons that are not clear from the First Amended Complaint, on September 25, 2009, Appellants sought assistance from a third party named "Emergency Mortgage Relief" ("EMR").  (ER 209 ¶ 42.)  Appellants do not allege that EMR had any affiliation with Appellees.  (*See* ER 201-223.)  Appellants were dissatisfied with EMR's services, and in December 2010 they obtained a partial refund of the amount they had paid EMR.  (ER 209-210.)

On October 8, 2010, Appellants returned to Chase, this time trying to get a modification through the Chase Homeownership Center, where they spoke with employee Rey Serrano.  (ER 210 ¶ 49.)  He allegedly told them that they "met the criteria for participating in the HAMP program," and that, although principal reductions were not permitted, "Chase underwriters would reduce their total monthly payments to an affordable amount."  (*Id.* at ¶¶ 50-51.)  Appellants then

7

submitted a second loan modification application for review by Chase. (*Id.* at ¶¶ 52-53.) Additional application materials were submitted in the following months after successive reviews. (*Id.*)

On June 27, 2011, Appellants hired a foreclosure defense law firm named "Trejo Law Corporation" (hereinafter "Trejo") to represent them. (ER 210 ¶ 54.) Promptly thereafter, in July 2011, Appellants stopped making payments on the Loan altogether (ER 210 ¶ 55.), thereby increasing the Loan balance.

On August 3, 2011, Chase sent Appellants a letter stating that they were ineligible for HAMP, because their "housing ratio exceeds the maximum allowed for this modification program." (ER 211 ¶ 56.) Appellants allege that they were told they would receive an offer for a "traditional loan." (*Id.*)

On August 15, 2011, Chase sent Appellants two loan modification offers. (ER 211 ¶¶ 58-59.) Appellants do not allege that they accepted either of Chase's offers, instead pleading that they made another attempt to get a modification one month later, this time submitting different documents to an unidentified entity. (*Id.* at 211 ¶ 61-62.)

According to the First Amended Complaint, on October 12, 2011, a representative from Trejo, Wendy Wright, spoke with Chase. (ER 211 ¶ 62.) Ms. Wright allegedly communicated to Appellants that "their loan was being assigned for review." (*Id.*) On November 8, 2011, Ms. Wright allegedly informed

8

Appellants that Chase had withdrawn both loan modification offers made three months before.  (ER 211 ¶¶ 63-64.)  Consistent with Chase's initial denial letters to Appellants, Ms. Wright also communicated to Appellants that, according to Chase, Appellants "make too much money" and that "they must demonstrate a 25% decrease in their income" before Chase would review any additional applications. (*Id.*)

Loan modification review complete, Appellants received letters regarding acceleration of the debt for non-payment.  (ER 211 ¶ 65.)  Appellants however do not allege that foreclosure proceedings were ever commenced.  (*See* ER 201-223.) Accepting as true that they ceased making payments on the Loan in June 2011, they have not made payments in excess of two years.

## VI.    STANDARD OF REVIEW

The dismissal of Appellants' claims pursuant to Rule 12(b)(6) is subject to *de novo* review.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  The facts alleged in a complaint are to be taken as true and must "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, mere legal conclusions "are not entitled to the assumption of truth."  *Id.*  The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

If a district court's decision on a Rule 12(b)(6) motion is correct, it must be

9

affirmed, even if the district court relied on incorrect grounds or reasoning. *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643 (9th Cir.1989). A district court's denial of leave to amend is reviewed for an abuse of discretion. *See Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir.1999).

The denial of a motion under Rule 6(b) is also reviewed for abuse of discretion. *See Kyle v. Campbell Soup Co.,* 28 F.3d 928, 930 (9th Cir.1994).

## VII.   SUMMARY OF THE ARGUMENT

Each claim asserted in the First Amended Complaint against Deutsche Bank, Freddie Mac, and MERS was properly dismissed because the few allegations pertaining to these parties were facially insufficient. The fraud, conspiracy, negligence, promissory estoppel, and Section 17200 claims against Chase were premised on alleged "indications" by Chase representatives made prior to Appellants' submission of written loan modification applications. However, such statements are not actionable under any of the theories pled. A lender has no obligation to offer a borrower a loan modification, much less one that meets the borrower's expectations, and Appellants failed to allege facts showing that Chase promised to give them a particular loan modification. Instead, Appellants admit that Chase in fact presented two loan modification offers, but that Appellants took no action on those offers, instead submitting yet another application with different documents to an unidentified entity. But perhaps most significantly, Appellants

10

fail to allege that they sustained any damages as a result of any statement Chase is alleged to have made.

The district court did not abuse its discretion in denying further leave to amend. The court previously granted Appellants sixty days' leave to amend their complaint. Despite this lengthy opportunity, Appellants could not state facts to support their claims. Appellants fail to identify new facts they could allege that would have remedied the defects in any cause of action, particularly as to their failure to allege damages. The district court properly determined that it was futile to permit further amendment.

Finally, the district court properly denied Appellants' *ex parte* application to submit an untimely opposition to the motion to dismiss that had been taken under submission by the court fourteen days earlier on September 26, 2012. The record shows that Appellants received notice of the motion, that each of their proffered explanations for failing to timely oppose the motion were not credible and did not excuse their failure to do so, and that they unreasonably delayed in seeking relief for two weeks after they admit they knew of the hearing. Indeed, the record reveals that Appellants filed a case management statement on September 14, 2012, in which they expressly referred to the pending motion to dismiss. Yet they failed to file an opposition or a timely motion for leave to file a late opposition, and instead offered the untenable claim that they were previously unaware of the

11

motion.  All relevant factors weighed against a finding of excusable neglect under Rule 6(b).  In any event, the trial court's purported error was not prejudicial, as consideration of any opposition would not have affected the district court's conclusion that the First Amended Complaint could not survive a motion to dismiss.

## VIII.  LAW AND ARGUMENT

### A.  The District Court Did Not Err in Granting Appellees' Motion to Dismiss the First Amended Complaint.

#### 1.  The First Amended Complaint Failed to State a Fraud Cause of Action.

This Court looks to state law to determine the elements of a fraud claim. *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir.2009).  In California, the elements of fraud are: (a) misrepresentation; (b) knowledge of falsity (or 'scienter'); (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage. *See Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173-174 (2003).

Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  A claim of fraud must be plead with "a high degree of meticulousness."  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-1023 (9th Cir.2000).  The plaintiff claiming fraud against a corporate defendant, as here, must meet a heightened standard by specifically pleading facts showing (1) the contents of the misrepresentation, (2) the identity of

12

the speaker and his or her authority to speak, (3) when and where the statements were made, (4) whether the statements were oral or written, and (5) the manner in which the representations are allegedly false or misleading. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir.2007).

     a. <u>Appellants Stated No Factual Allegations Against Appellees Deutsche Bank, Freddie Mac, or MERS.</u>

   Appellants' First Amended Complaint stated no factual allegations purporting to show that Deutsche Bank, Freddie Mac, or MERS engaged in fraudulent conduct. (ER 201-223.) Accordingly, dismissal of the fraud claim against these defendants was proper under Rule 9(b). *See Swartz*, 476 F.3d at 764-65. Further, the Opening Brief's failure to argue that Appellants stated a viable fraud claim against these Appellees should be deemed a waiver of the claim. (*See, e.g., Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir.1994); *see also* OB 11-18.)

     b. <u>Appellants Alleged No Facts That Support A Fraud Claim Against Chase.</u>

   As the district court noted, under California law, there is no requirement that a lender offer a borrower a mortgage loan modification. *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal.App.4th 1602, 1617 (2011); *see also Mabry v. Superior Court*, 185 Cal.App.4th 208, 214 (2010). To the extent Appellants argue that Chase promised them a modification, their allegations fall far short of stating a

claim for fraud.  As discussed below, the district court properly dismissed the fraud claim because Appellants failed to allege facts showing that Chase made any actionable misrepresentation, or that Appellants relied to their detriment on anything Chase allegedly said, much less that they incurred damages caused by any reasonable reliance.

   i. <u>Appellants Failed To Allege Any Actionable Misrepresentation.</u>

    (1) Jackson Statement

Appellants identify four alleged misrepresentations, none of which constitutes a promise to offer them a modification on their desired terms.  First, Appellants allege that on April 3, 2009 – prior to their having submitted any application for a modification (ER 208 ¶¶ 32-34) –  Chase employee Angie Jackson "indicated that Plaintiffs fit the guidelines for participation in the [HAMP] program."  (ER 208 ¶ 32.)  An "indication" falls far short of a fraudulent misrepresentation.  Appellants do not allege that Ms. Jackson told them that they were guaranteed a permanent modification or even that they would be approved upon submission of an application; only that they fit the HAMP guidelines.

Appellants admit they had not submitted a loan modification application at the time of this conversation.  Their application was submitted *after* this conversation.  (ER 208 ¶¶ 32-34.)  The fact that Appellants understood they had to

apply for a loan modification by submitting an application and financial documentation confirms that even Appellants did not believe that Ms. Jackson had promised, approved or offered them a loan modification.  (ER 208 ¶ 33-34.)

In *Conrad v. Bank of America*, the plaintiff sought to base a fraud claim on an allegation that a bank representative made an oral promise to approve a loan prior to the submission of an application.  45 Cal.App.4th 133, 156 (1996) *declined to follow on other grounds in Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85, 94 (2001).  The plaintiff told the lender that he would need a $40,000 loan, and the bank representative said that "he would comply" and agreed to process the loan application.  *Id*.  After the application review process, the bank did not extend the loan.  *Id*.  The court held the pre-application statement could not be deemed misrepresentation because it did not constitute an agreement to make a loan, and that reasonable reliance could not be established because the plaintiff knew a subsequent application process was required.  *Id*. at 156-157 *citing Kruse v. Bank of America,* 202 Cal.App.3d 38, 59 (1988); *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985).

Here, Ms. Jackson's "indication" regarding HAMP guidelines did not promise that a loan modification offer would be extended, and Appellants admittedly understood her statement was preliminary to a formal application and review process.  An "indication" is yet a weaker basis for fraud than the statements

15

found legally insufficient in *Conrad. See* 45 Cal.App.4th at 156.

Further, in California it is well established that expressions of opinion are not grounds for a misrepresentation cause of action. *See, e.g.*, *Neu-Visions Sports v. Soren/McAdam/Bartells*, 86 Cal.App.4th 303, 307 (2000) cited in *Louis v. Nailtiques Cosmetic Corp.*, 423 F. App'x 711, 713 (9th Cir.2011). In *Avila v. Wells Fargo Bank*, the plaintiff's fraud claim was premised on the allegation that a bank representative stated that "the loan modification looks good." 2012 WL 2953117 *14 (N.D.Cal.2012). The *Avila* court dismissed the claim because the alleged statement was an opinion, not a misrepresentation of fact. *Id.* Here, Appellants admit they had not submitted an application at the time they spoke with Ms. Jackson and that her reference to HAMP guidelines was an "indication" only. Such allegations show the fraud claim was premised on a mere statement of opinion and was therefore properly dismissed. *See id.*; *see also Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal.App.3d 860, 865 (1980) (affirming dismissal of fraud claim on demurrer because the alleged misrepresentation was a statement of opinion.)

The district court also properly dismissed the fraud claim because Appellants failed to allege facts establishing knowledge of falsity or intent to defraud. After *Iqbal*, a pleading of fraud must state non-conclusory factual allegations establishing these elements. *See Iqbal*, 566 U.S. at 686; *see also U.S.*

*ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir.2011);

*Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.,* 674 F.3d 369, 377 (4th

Cir.2012).  Both of these elements are entirely absent in the pleading here.

No factual allegations suggest that Ms. Jackson knew that she was making a

false statement regarding HAMP guidelines on April 3, 2009.  Although the

application was denied on July 28, 2009 because Appellants' "property equity

exceeds [the] program guidelines" (ER 209 ¶ 39), no allegations suggest that Ms.

Jackson had such knowledge at the time of her "indication" on April 3, 2009.

Appellants thus fail to establish the element of knowledge of falsity.  *See Gen.*

*Dynamics C4 Sys., Inc.*, 637 F.3d at 1054-55.  Likewise, no factual allegations

support an inference that Ms. Jackson intended to defraud Appellants by

responding to their inquiry about a modification as she did.  *See id.*

(2)    Serrano Statement

On October 8, 2010, more than a year after the denial of their first loan

modification application, Appellants contacted Mr. Serrano, another Chase

employee.  He is alleged to have said they "met the criteria for participating in the

HAMP program," and that principal reductions were not permitted, but that "Chase

underwriters would reduce their total monthly payments to an affordable amount."

(ER 210 ¶¶ 49-51.)  Appellants admit they did not have a pending loan

modification application at this time, either, and that they submitted their second

17

loan modification application after this conversation.  (*Id.* at ¶ 52.)  Additional

financial documentation was also submitted in the following months.  (*Id*. at ¶ 53.)

On August 3, 2011, Chase sent Appellants a letter advising that a review of

their application resulted in a determination that they were ineligible for HAMP

because their "housing ratio exceeds the maximum allowed for this modification

program."  (ER 211 ¶ 56.)  On August 15, 2011, Chase sent Appellants two non-

HAMP loan modification offers.  (ER 211 ¶¶ 58-59.)

Mr. Serrano's pre-application statement regarding HAMP "criteria" fails for

the reasons that Ms. Jackson's statement fails.  There is no alleged representation

that Chase would offer Appellants a HAMP loan modification, and his pre-

application indication regarding criteria was a mere opinion made prior to an

application process.  *See Conrad,* 45 Cal.App.4th at 156; *Richard P.*, 106

Cal.App.3d at 865.

Further, although Appellants' application was ultimately denied for HAMP

on August 3, 2011 because their "housing ratio exceeds the maximum allowed," no

facts whatsoever are alleged that establish Mr. Serrano knew that was the case on

October 8, 2010.  (ER 211 ¶ 56.)  The claim was thus properly dismissed because

no allegations establish he made a knowingly false statement regarding HAMP.

*See, e.g., Gen. Dynamics C4 Sys., Inc.*, 637 F.3d at 1054-55.  Likewise, there is

nothing that indicates his statement was made with intent to defraud Appellants.

*See id.*

Additionally, as the district court noted, Appellants admit that Chase in fact extended them two modified loan offers on August 15, 2011.  (ER 211 ¶¶ 58-59.) Appellants also admit they received revised modified loan offers that listed what they claim was the "correct" interest rate.  (ER 211 ¶ 60.)  Accordingly, even if any of Mr. Serrano's statements could be construed to constitute a promise that a loan modification offer would be forthcoming, Appellants concede that his statement was not false because Chase offered them two loan modifications.  *See Richard P.*, 106 Cal.App.3d at 865 (fraud claim properly dismissed on demurrer where no allegations showed the representation was false.)

(3)     Statement By An Unidentified Individual

Appellants also allege that an unidentified individual told them on September 19, 2011 that they were "good candidates" for a loan modification.  (ER 211 ¶¶ 61-63.)  Appellants fail to identify the speaker, his or her authority to speak on behalf of Chase, or what purported terms, if any, were to be offered.  The allegation thus fails to satisfy Rule 9(b).  *See Swartz*, 476 F.3d at 764-65.  This is particularly true where Appellants contend they retained third parties such as Trejo and those individuals were making representations to them regarding their loan modification applications at that time.  (ER 210 ¶ 54; 211 ¶¶ 61-63.)  Moreover, such a statement is not significantly different from the equally weak "indication"

19

discussed above. Further, nothing suggests that Chase had knowledge this purported statement was false, or that whoever made the statement made it with an intent to defraud. *See, e.g., Iqbal*, 566 U.S. at 686. The statement also fails because it was a mere opinion. *See, e.g., Avila,* 2012 WL 2953117 *14.

(4)    The Interest Rate Error

The final alleged misrepresentation identified by Appellants is an alleged error in an August 2011 letter listing an incorrect interest rate – an error which Appellants admit was immediately "corrected" before they took any action in reliance on the mistake. (ER 211 ¶¶ 58-60.) The allegation that Chase mistakenly identified the wrong interest rate and quickly corrected it cannot support a claim for fraud. Appellants do not and cannot allege that it was anything other than a mistake, and certainly do not allege that it was knowing, intentional, or made with intent to defraud. *See, e.g., Iqbal*, 566 U.S. at 686. Appellants' concession that the error was immediately corrected, before Appellants took any action relying on it, confirms the lack of intent to defraud. *See, e.g.*, *Small*, 30 Cal.4th at 173-174.

ii.    <u>Appellants Did Not Allege Any Facts That Support The Elements Of Reliance Or Resulting Damages.</u>

To state a claim for fraud, the plaintiff must plead facts showing they actually and justifiably relied on the misrepresentation, and that they suffered damages as a result of such reliance. *Caldo v. Owens-Illinois, Inc*., 125 Cal.App.4th 513, 519 (2004) (affirming dismissal of fraud claim on demurrer

20

where no allegations established actual reliance.); *see also Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332 (1986) (affirming dismissal where no allegations established justifiable reliance.)

Appellants here do not allege that they lost the Property, through foreclosure or otherwise; nor do they allege any other direct financial harm.  The only purported damage that Appellants identify here is the "expense of hiring legal and other services, including EMR and TREJO, in an effort to respond to Defendants' fraudulent conduct."  (OB 14.)  The fact that Appellants elected to seek legal counsel or other assistance because they were dissatisfied with the decision on their application or the terms of the modifications that were offered to them cannot establish either reliance or resulting damages, as discussed below.

          (1)     The Allegations Related to EMR Failed to Establish Reliance or Resulting Damages.

Appellants state that on September 25, 2009, they "learned about and contacted EMR" and "paid $599 to receive this service."  (OB 4.)  As alleged by Appellants, their decision to retain EMR was made after receiving Chase's July 28, 2009 letter advising Appellants that their application had been denied.  (ER 209 ¶ 39.)  These allegations fail as a basis for a fraud claim.

As an initial matter, Appellants do not allege that EMR had any affiliation with any Appellee (*See* ER 201-223), or that Chase requested or required that Appellants engage EMR.  (*See* ER 209-210.)  Rather, Appellants allege that they

hired EMR after they were denied a modification and "in an effort to respond to Defendants' fraudulent conduct" (OB 14.) Thus, far from alleging reliance on any words or conduct of Chase, Appellants instead allege that they retained EMR because they were "responding" to a decision on their application with which they were dissatisfied. Appellants thus concede that if they had ever acted in reliance on a Chase representation, they clearly were not doing so when they sought assistance from EMR. That Appellants voluntarily sought assistance from EMR in pressing their case with Chase cannot constitute reliance as a matter of law. *See Wilhelm,* 186 Cal.App.3d at 1332; *see also Caldo*, 125 Cal.App.4th at 519.

> (2)  The Allegations Related to the Retention of the Foreclosure Defense Law Firm Failed to Establish Reliance or Resulting Damages.

Appellants' only other argument for reliance damages is that on June 27, 2011 they retained "TREJO, in an effort to respond to Defendants' fraudulent conduct." (OB 6; 14.) This allegation fails for the same reasons discussed above. Appellants' choice to retain legal counsel in a misguided bid to extract a modification they wanted resulted from their own volition, rather than from reliance on any statement by Chase. Further, such fees, voluntarily incurred by Appellants to assist them in negotiating with Chase cannot constitute damages as a matter of law. *See* Cal. Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10); *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.,* 211 Cal.App.4th 230, 237 (2012);

*Bevard v. Farmers Ins. Exch.*, 127 F.3d 1147, 1148 (9th Cir.1997) (reciting

American Rule that attorney's fees are not recoverable unless provided for by

contract or statute.)

     The dismissal of the fraud claim should be affirmed because Appellants

failed to allege that they relied to their detriment on anything said or done by

Chase, and because they did not suffer any cognizable harm as a result of anything

Chase did or did not do. *See Wilhelm,* 186 Cal.App.3d at 1332; *see also Caldo*,

125 Cal.App.4th at 519; *Conrad,* 45 Cal.App.4th at 156.

> iii.    <u>Appellants' Cited Authority Does Not Support Their
> Fraud Cause of Action.</u>

    In their Opening Brief, Appellants argue that the case of *West v. JPMorgan*,

214 Cal.App.4th 780 (2013) supports a claim for fraud on similar facts.  Appellants

are simply wrong.  In *West*, the borrower entered a bank's written HAMP "Trial

Plan Agreement" ("TPA") that promised no foreclosure would occur while trial

payments were made.  *Id.* at 789-791.  The borrower made trial payments over ten

months.  *Id*.  After denying her for a permanent HAMP modification, the bank

allegedly told the borrower that she could "resubmit her updated financial

data…and that there was no foreclosure sale date or scheduled date." *Id*.  A

foreclosure sale was conducted two days later.  *Id*.  The *West* court held that the

borrower had acted in reliance on the TPA and subsequent statements, and was

damaged by the subsequent foreclosure.

The present alleged facts find no parallel in *West*. Appellants here neither received nor accepted a HAMP TPA, and they made no payments thereunder. Nor do Appellants allege that any foreclosure has occurred. Appellants allege only that Chase "indicated" that they met HAMP guidelines, and they failed to show any action in reliance on that alleged indication caused them damages. Accordingly, the *West* decision has no application here.

Appellants failed to allege any actionable misrepresentation, reliance or any cognizable resulting harm. For these reasons, the trial court's dismissal of Appellants' fraud claim must be affirmed.

> 2. The First Amended Complaint Failed to State a Civil Conspiracy Cause of Action.

Conspiracy is not an independent cause of action, but is instead "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 992 (9th Cir.2001) "Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy." *Id.*; *see also Kidron v. Movie Acquisition Corp.,* 40 Cal.App.4th 1571, 1581 (1995).

A claim for civil conspiracy to defraud is subject to the heightened pleading standard of Rule 9(b). *Twombly,* 550 U.S. at 556; *see also Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985); cited in *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.2003)

As alleged by Appellants, their conspiracy claim is dependent on their fraud cause of action. (ER 216-217.) As discussed above, the fraud cause of action failed to state a claim. The dismissal of the derivative conspiracy claim should thus be affirmed as well. *See Applied Equip. Corp.*, 7 Cal.4th at 510-11.

Further, the conspiracy allegations do not identify any particular Appellee, or any alleged act of any Appellee in furtherance of a coordinated plan of action. (ER 216-217.) Appellants' conclusory allegations set forth no factual content, and refer only to "defendants" generally. (*Id.*) The conspiracy allegations do not satisfy Rule 9(b). *See Hayduk*, 775 F.2d at 444.

Additionally, the First Amended Complaint does not state factual allegations showing that Deutsche Bank, Freddie Mac, or MERS took any action with respect to a loan modification. (ER 201-223.) The conspiracy claim thus fails to show either that Deutsche Bank, Freddie Mac, or MERS formed and agreed to a conspiracy regarding a loan modification, or that Chase agreed to form a conspiracy with them. *See Kidron*, 40 Cal.App.4th at 1581.

Finally, Appellants failed to establish any actual pecuniary loss resulted

SF01DOCS\150819

from any alleged fraudulent statement regarding a loan modification, as discussed in Section VIII(A)(1)(b)(ii). For these reasons, the lower court's dismissal of this claim should be affirmed. *See Applied Equip. Corp.*, 7 Cal.4th at 510-11.

      3.    <u>The First Amended Complaint Failed to State a Negligence Claim.</u>

"Under California law, the elements of a claim for negligence are (a) a legal duty to use due care; (b) breach of such legal duty; and (c) the breach was the proximate or legal cause of the resulting injury." *Walters v. Fidelity Mortg. Of CA*, 730 F.Supp.2d 1185, 1205-06 (E.D.Cal.2010); *see also Truong v. Nguyen,* 156 Cal.App.4th 865, 875 (2007). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed Savings & Loan Assn*., 231 Cal.App.3d 1089, 1095 (1991).

Appellants' negligence claim was premised entirely on the loan modification allegations discussed in Section VIII(A)(1). (ER 218-219.) As discussed below, the district court's dismissal of the negligence claim should be affirmed.

      a.    <u>Appellants Stated No Facts Against Deutsche Bank, Freddie Mac, or MERS in Support of the Negligence Claim.</u>

The First Amended Complaint does not allege any facts supporting a negligence claim against Deutsche Bank, Freddie Mac, or MERS. (ER 201-223.) Appellants thus fail to establish a duty, breach, causation or damages and otherwise fail to sufficiently plead a claim. *See, e.g., Iqbal*, 566 U.S. at 686.

///

26

b.     No Allegation of Fact Established That Chase Owed a Duty of Care.

As noted above, in California, lenders do not have a duty to offer a mortgage loan modification.  *Hamilton*, 195 Cal.App.4th at 1617; *see also Sullivan v. JP Morgan Chase Bank, NA*, 725 F.Supp.2d 1087, 1094 (E.D.Cal.2010) (allegations that a lender has misrepresented that loan modifications would be made are insufficient to support a negligence claim).  Further, "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark*, 231 Cal.App.3d at 1093, at n. 1.  A "commercial lender is entitled to pursue its own economic interests in a loan transaction."  *Id*.; accord *Wagner v. Benson,* 101 Cal.App.3d 27, 33-35 (1980); *see also Oaks Management Corp. v. Superior Court,* 145 Cal.App.4th 453, 466 (2007) (a "loan transaction is at arms-length").  "[A] financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark,* 231 Cal.App.3d at 1096.  "Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.*

Appellants allege no facts indicating that Chase exceeded the role of a traditional money lender.  Appellants obtained the Loan from Chase, and Chase serviced the Loan.  The district courts have found that acting as a loan servicer is a traditional banking role that creates no duty to the borrower.  *Carpenter v. Bank of*

*Am., N.A.*, 2013 WL 28772 at *2 (S.D.Cal.2013) citing *Shepherd v. American Home Mort g. Servs., Inc.,* 2009 WL 4505925 at *2 (E.D.Cal.2009); *see also Mulato v. WMC Mortg. Corp.,* 2009 WL 3561536 at *3 (N.D.Cal.2009).

Appellants admit the Loan was properly funded in 2007, and that in 2009 they contacted Chase seeking a loan modification. Chase responded to their requests, reviewed their loan modification applications and ultimately determined that they were not eligible for a HAMP modification. Chase also extended two modified loan offers, neither of which Appellants accepted.

The district courts have confirmed that a lender who permits a borrower an opportunity to seek a loan modification does *not* exceed the scope of their conventional lender role, and therefore does not owe a legal duty. *See, e.g., Karimi v. Wells Fargo,* 2011 WL 10653746 (C.D.Cal.2011) (finding loan modification to be "intimately tied" to bank's lending role); *Sullivan*, 725 F.Supp.2d at 1094; *Carpenter*, 2013 WL 28772 at *2; *Eghtesadi v. Wells Fargo Bank, N.A.*, 2013 WL 1498999 at *11(S.D.Cal.2013); *Morgan v. U.S. Bank Nat. Ass'n*, 2013 WL 684932 at *3 (N.D.Cal.2013).

Furthermore, as the court in *Carpenter* found, the law does not impose on the lender a "duty to give the distressed homeowner the answer he wants with respect to a loan modification." 2013 WL 28772 at *2-3; *see also Roussel v. Wells Fargo Bank*, 2013 WL 146370 at *5-6 (N.D.Cal.2013).

28

Appellants' Opening Brief claims that in light of *Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872 (2013),[3] the general rule laid down in *Nymark* no longer applies and that trial courts must now conduct a full blown factual analysis of the so-called *Biakanja* factors in every case prior to deciding whether a duty of care exists. *Jolley* held no such thing. The *Jolley* court found it appropriate on the particular facts before it to go beyond the *Nymark* no-duty rule and "consider" the *Biakanja* factors. 213 Cal.App.4th at 899. That decision has no application here because none of the facts that the *Jolley* court found critical are present in this case.

*Jolley* involved a very different – and unique – set of facts having no parallel here. In *Jolley,* Plaintiff obtained a construction loan from Washington Mutual pursuant to which WaMu committed to provide ongoing disbursements as needed to fund the construction project. As the *Jolley* court noted, Plaintiff alleged that WaMu failed to timely fund the loan and shorted Plaintiff by approximately $350,000. 213 Cal.App.4th. at 878. Jolley further alleged that he subsequently entered into a modification agreement with a "variable: new principal amount,"

---

[3] *Jolley* arose in the context of summary judgment. Chase adopts the court's factual narrative in *Jolley* purely for the sake of the present argument. The case is before the trial court for determination of the ultimate facts.

under which "WaMu promised that if [Jolley] increased the square footage and scope of the work that [WaMu] would supply the additional funds needed to complete the construction . . . ." *Id.* at 879. *Jolley* subsequently defaulted, "claiming he was forced to default . . . by WaMu's breaches and negligence in the funding of the construction loan." *Id.* at 880. Finally, Plaintiff alleged that after WaMu was shut down by the FDIC and Chase assumed the loan, that he incurred additional costs to complete the construction project in reliance on alleged "specific representations as to the likelihood of a loan modification." *Id.* at 898.

On those unique and unusual facts, the *Jolley* court held that "[w]here there is a long running dispute whether the failed bank properly disbursed monies due under the loan, the acquiring bank owes a duty of care to investigate the history of the loan and take that into account in negotiating with the borrower for a loan modification." *Id.* at 901. In so holding, the *Jolley* court emphasized that the case involved a construction loan with a promise of ongoing involvement and support:

> We note that we deal here with a construction loan, not a residential home loan where, save for possible servicing issues, the relationship ends when the loan is funded. By contrast, in a construction loan the relationship between lender and borrower is ongoing, in the sense that the parties are working together over a period of time, with disbursements made throughout the construction period, depending on the state of progress toward completion. We see no reason why a negligent failure to fund a construction loan, or negligent delays in doing so, would not be subject to the same standard of care.

*Id.*

**None** of the facts which the *Jolley* court found critical in finding a duty of care are present here. Appellants received a traditional residential loan, which they admit was fully funded and involved no ongoing disbursement or other obligations on the part of Chase. There was no tortured loan history or other alleged wrongdoing on the part of a failed predecessor bank. And Appellants were considered for a loan modification and were ultimately offered at least two loan modifications, which they rejected. In sum, none of the features that lead *Jolley* to conclude that the lender participated in the financed enterprise beyond the domain of the usual money lender are present in this case. Accordingly, there is no basis to compel the trial court to depart from the *Nymark* "no duty" rule and no basis for reversing the trial court's determination that no duty of care exists on the facts alleged by Appellants here. *See Nymark,* 231 Cal.App.3d at 1096.

c.    <u>Appellants Waived the Negligence Claim by Failing to Raise Any Argument on the Elements of Breach, Causation or Damages.</u>

Appellants do not even argue that they alleged facts establishing a breach of any duty of care. (*See* OB 18-19.) Nor do Appellants raise causation or damages arguments. (*Id.*) Appellants' failure to contend that they satisfied these elements of a negligence cause of action should be deemed a waiver of any claim of error related to this count of the First Amended Complaint. *See, e.g., Greenwood*, 28 F.3d at 977.

31

d.     No Allegations of Fact Establish Chase Breached a Duty of Care.

Appellants' negligence claim is premised on the apparent notion that Chase was required to offer them a loan modification, yet Appellants admit that they received two modified loan offers, neither of which they accepted. Thus, even had Appellants sufficiently alleged a duty to modify their Loan, they can allege no breach of that duty. To the extent Appellants claim that Chase owed and breached a duty to offer the loan modification on terms *they wanted*, they fail to identify any basis for such a duty, as discussed above. *See, e.g., Carpenter*, 2013 WL 28772 at *2-3.

Finally, the negligence claim is time-barred under the two year statute of limitations to the extent it is premised on Ms. Jackson's alleged April 3, 2009 statement, as Appellants' complaint was not filed until November 22, 2011. *See* Cal. Code Civ. Proced. § 335.1.

e.     No Allegations of Fact Establish Appellants Sustained Damages as a Result of a Breach of a Duty.

Appellants failed to show that Chase caused them damages from any alleged breach of duty, as discussed in VIII(A)(1)(b)(ii) above. The negligence claim was thus properly dismissed for failure to establish duty, reliance or resulting damages. *See, e.g., Truong,* 156 Cal.App.4th at 875.

///

4.     <u>The First Amended Complaint Did Not State a Cause of Action for Promissory Estoppel.</u>

A promissory estoppel claim must be supported by factual allegations "establishing: (1) the existence of a promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise." *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 445 (9th Cir.1992). The alleged promise must be "clear and unambiguous" in its terms. *See id.* at 446 citing *Laks v. Coast Fed. Savings & Loan Ass'n*, 60 Cal.App.3d 885, 891 (1976); *see also Lange v. TIG Insurance Company*, 68 Cal.App.4th 1179, 1185-1186 (1998).

a.     <u>Appellants Failed to Plead Facts Establishing a Clear and Unambiguous Promise.</u>

The Opening Brief premises the promissory estoppel cause of action solely on the alleged pre-application indications by Ms. Jackson and Mr. Serrano. As more fully discussed above in conjunction with the fraud cause of action, the pre-application statements of Ms. Jackson or Mr. Serrano do not rise to the level of a clear and unambiguous promise of anything definite: the employees did not promise that Chase would offer Appellants a HAMP loan modification. (ER 208 ¶ 32.) Appellants therefore necessarily fail to make the greater showing of a clear and unambiguous promise to do so. *See Lange,* 68 Cal.App.4th at 1186 (rejecting

33

promissory estoppel claim because "we cannot find in [defendants'] letter a promise of any sort, let alone a promise of sufficient definitiveness and clarity to justify applying promissory estoppel.")

Appellants also admittedly understood that they had to formally apply for a loan modification after each of these conversations, as discussed above. This awareness precludes any argument that Appellants understood the pre-application statements as an offer or promise of a loan modification. *See Laks,* 60 Cal.App.3d at 89 (holding a "conditional commitment" letter failed to constitute a clear and unambiguous promise because it was apparent from the letter that "finalization of the terms will undoubtedly require further negotiation.")

Likewise, the alleged pre-application statement that Chase underwriters would reduce the monthly payments to "an affordable amount" does not constitute an offer or a clear and unambiguous promise. A promise that is "vague, general or of indeterminate application" is not enforceable or sufficient to maintain a claim for promissory estoppel. *Aguilar*, 966 F.2d at 446. The fact that two modified loan offers were extended – and rejected by Appellants – underscores the indeterminate and vague nature of this supposed promise. *See id.*

Additionally, absent a written agreement to modify the Loan, any claim based upon an oral offer or promise to modify the Loan is barred by the statute of frauds. *Seacrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 552

34

(2008); *see also Melegrito v. CitiMortgage Inc.*, 2011 WL 2197534 at *12-13

(N.D.Cal.2011); *Jones v. CitiMortgage, Inc.,* 2013 WL 1704304 at *5-6

(E.D.Cal.2013).  Thus, even if the alleged pre-application statement regarding an

"affordable amount" could constitute a clear and unambiguous promise, it is barred

by the statute of frauds and cannot support a promissory estoppel claim.  *See id.*

Finally, any promissory estoppel claim premised on Ms. Jackson's April 3,

2009 statement is time-barred under the two-year statute of limitations because

Appellants' complaint was not filed until November 22, 2011.  *See* Cal. Code Civ.

Proced. § 339(1).

b.  <u>No Facts Showed Appellees Breached a Clear and Unambiguous Promise.</u>

It is fundamental that a defendant must have breached or dishonored a clear

and unambiguous promise for a plaintiff to establish that they reasonably relied on

it to their detriment.  *See, e.g., US Ecology, Inc. v. State,* 129 Cal.App.4th 887,

904-5 (2005).  Even if one could reasonably construe alleged pre-application

statements by Chase as an unambiguous promise that Chase would offer a loan

modification, Appellants admit that Chase in fact did make two loan modification

offers.  (ER 211 at ¶¶ 58-60.)  Appellants therefore cannot establish a breach.  *See

US Ecology, Inc.,* 129 Cal.App.4th at 901.

Finally, Appellants stopped paying on the Loan while their second loan

modification application was under review.  (ER 210 at ¶ 55.)  Even if Chase had

not made two modified loan offers, there would still be no breach of a clear and
unambiguous promise because Appellants do not contend that Chase promised to
give them a loan modification even if they subsequently chose to default on the
Loan.

      c.      <u>No Facts Established Actual, Foreseeable and Reasonable
Reliance Caused Appellants Damage.</u>

Appellants must show that they actually relied on a "promise which the
promissor should reasonably expect to induce action or forbearance on the part of
the promisee…" *Advanced Choices, Inc. v. State Dept. of Health Services,* 182
Cal.App.4th 1661, 1672 (2010); *see also Aceves v. U.S. Bank, N.A.*, 192
Cal.App.4th 218, 227-8 (2011).

Appellants did not allege that Ms. Jackson or Mr. Serrano requested
or required that they hire EMR or the Trejo law firm, as discussed in Section
VIII(A)(1).  The district court thus properly dismissed the claim because
Appellants failed to show their alleged retention of EMR or Trejo was foreseeable
at the time the statements were made.  *See Advanced Choices, Inc.,* 182
Cal.App.4th at 1672.

Further, Appellants allege they hired EMR and Trejo "in an effort to respond
to Defendants' fraudulent conduct."  (OB 14.)  As discussed above, this is not a
reliance argument, but instead shows that Appellants hired both of their own

36

accord and for an entirely different purpose that involved "responding to" unidentified conduct to which they objected. These allegations prevent Appellants from establishing the element of actual and reasonable reliance, and the claim was therefore properly dismissed. *See, e.g., Advanced Choices, Inc.,* 182 Cal.App.4th at 1672.

Finally, as discussed in Section VIII(A)(1)(b)(ii), Appellants failed to establish damages. Chase extended two modified loan offers, and no foreclosure proceedings were commenced. The promissory estoppel claim was properly dismissed because no facts show actual pecuniary loss resulted from reliance on a clear and unambiguous promise. *See Laks,* 60 Cal.App.3d at 891-893.

Appellants' citation to *Aceves* does not support their claim. 192 Cal.App.4th 218. In *Aceves*, the borrower had a pending bankruptcy and the automatic stay was in place preventing foreclosure. *Id*. at 223. The lender filed a motion to lift the stay, and sent the borrower a letter requesting she dismiss the bankruptcy and, in return, the bank would, "work with [Aceves] on a mortgage reinstatement and loan modification." *Id.* The borrower allowed the stay to be lifted in reliance on the written offer. *Id*. at 223-224. The lender then refused to negotiate, and foreclosed thirty days later. *Id. Aceves* is distinguishable from the present situation.

Unlike *Aceves* where the lender requested the borrower to forgo the protection of the stay, here Chase made no reference to EMR or Trejo and nothing

suggests that Chase expected or intended that Appellants would retain them. *See id.* at 227-8. And unlike *Aceves,* Appellants did not forego a barrier to foreclosure in reliance on any promise, and Chase did not commence foreclosure proceedings or otherwise utilize their supposed reliance in order to do so. *See id*. at 221-223.

Appellants' citation to the *West v. JPMorgan* case is inapposite for the reasons previously discussed in Section VIII(A)(1)(b)(iii).

> 5. The First Amended Complaint Does Not State a Cause of Action for Violation of Business and Professions Code Section 17200.

Section 17200 prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business practice." To state a Section 17200 cause of action based on an unlawful business practice, a plaintiff must allege facts sufficient to show a violation of an underlying statute. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163 (1999); *see also Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal.App.4th 1544, 1554 (2007).

When "determining whether the challenged conduct is "unfair within the meaning of the unfair competition law . . . , courts may not apply purely subjective notions of fairness." *Scripps Clinic v. Superior Court,* 108 Cal.App.4th 917, 941(2003) citing *Cel-Tech,* 20 Cal.4th 163. Rather, a claim under the statute's unfair prong must be "tethered" to a specific constitutional, statutory, or regulatory provision to find an objective basis for determining whether the alleged conduct is

unfair.  *See id.*; *see also Davis v. Ford Motor Credit Co.,* 179 Cal.App.4th 581, 597 (2009).

A Section 17200 cause of action proceeding under the fraudulent prong must state facts showing specific deceptive statements that are likely to deceive the public.  *See Davis*, 691 F.3d at 1169; *see also Olsen v. Breeze,* 48 Cal.App.4th 608, 618 (1996).

A plaintiff lacks standing to bring a Section 17200 claim unless he alleges "injury in fact and a loss of money or property caused by unfair competition." *Peterson v. Cellco P'ship*., 164 Cal.App.4th 1583, 1590 (2008).  As discussed below, Appellants' Section 17200 claim fails for several reasons.

     a.    <u>Appellants Raise No Argument Showing a Business Practice that Violated Section 17200 and the Claim Should be Deemed Waived.</u>

Appellants make no argument in their Opening Brief that any alleged act by Appellees violated Section 17200, or any of its unlawful, unfair or fraudulent prongs.  (OB 23.)  Nor do Appellants identify any legal authority in support of this claim.  (*See id.*)   Accordingly, the Court should deem the claim waived on appeal. *See Greenwood*, 28 F.3d at 977.

///

    b.    <u>No Allegations Established A Violation of Section 17200.</u>

        i.    <u>No Allegation Established an Underlying Violation of Statute.</u>

The Section 17200 portion of the First Amended Complaint consists of conclusory allegations pertaining to an accounting cause of action, which were ostensibly copied from a pleading in an unrelated case. (ER 220 ¶ 103 – 221 ¶ 106.)

The First Amended Complaint did not assert a cause of action under any statute. (ER 201-233.) The Opening Brief does not identify any statute that was allegedly violated. Accordingly, no claim was stated under Section 17200's unlawful prong. *See Davis*, 691 F.3d at 1168.

        ii.    <u>No Allegation Showed Appellees Engaged in an "Unfair" Business Practice.</u>

The Section 17200 cause of action stated no allegations of fact other than those supporting the first through fourth causes of action. (ER 220-221.) As set forth above, each of those causes of action fails to state a claim on which relief may be granted. Thus, the derivative Section 17200 cause of action also failed. *See, e.g.*, *Scripps Clinic,* 108 Cal.App.4th at 941. Finally, nothing in the First Amended Complaint showed that Appellees engaged in any business practice that was "unfair" within the meaning of Section 17200. *See Davis*, 691 F.3d at 1170. Nor does the Opening Brief raise an argument to the contrary. (OB 23.)

      iii.   <u>No Allegation Showed Appellees Engaged in a "Fraudulent" Business Practice.</u>

Appellants' fraud allegations fail to state a claim, as set forth in Section VIII(A)(1).  Further, Appellants did not state facts showing specific deceptive statements that are likely to deceive the public.  (ER 220-221.)  Appellants do not contend otherwise on appeal.  Accordingly, no claim was stated under Section 17200's fraudulent prong.  *See, e.g., Olsen,* 48 Cal.App.4th at 618.

      c.   <u>No Allegations of Fact Establish that Appellants Lost Money or Property as a Result of an Unfairly Competitive Business Practice.</u>

As the district court correctly found, Appellants' failure to allege facts showing they lost money or property as a result of an allegedly unfair business practice required dismissal of the Section 17200 claim for lack of standing.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098 at *3 (9th Cir.2013); *see also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011).

Appellants admit that no aspect of a foreclosure proceeding occurred, that Chase extended two modified loan offers, and no facts show Chase requested that Appellants retain EMR or Trejo, as discussed in Section VIII(A)(1)(b)(ii).  Accordingly, Appellants failed to establish loss of money or property was caused by unfair competition, and the dismissal of the Section 17200 claim should be affirmed for lack of standing.  *See Hinojos*, 718 F.3d 1098 at *3.

**B.** **Appellants Fail to Show the District Court Abused Its Discretion in Denying Further Leave to Amend.**

This Court reviews the district court's denial of leave to amend for an abuse of discretion. *See Bowles,* 198 F.3d at 757. This Court will find an abuse of discretion only when it "is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir.2000).

A district court's discretion over amendments is especially broad "where the court has already given a plaintiff one or more opportunities to amend his complaint...." *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n. 3 (9th Cir.1987) citing *Mir v. Fosburg*, 646 F.2d 342 (9th Cir.1980).

Appellants' initial complaint was filed on November 22, 2011. (Docket No. 1.) It was dismissed pursuant to motion on May 25, 2012, and the district court granted Appellants an unusually long period of sixty days leave to amend. (SER 1-11.) Accordingly, this is a case in which Appellants were previously provided an opportunity to amend, and though they had a full two months to gather all available facts in support of their claims, the amended pleading once again failed to state any claim.

The Opening Brief offers no reason why this Court should permit Appellants further leave to amend. Appellants do not identify the applicable standard of review, nor do they offer legal argument under it. More importantly, Appellants

42

fail to show they could have alleged facts remedying the defects in their causes of action. For instance, page 18 of the Opening Brief states:

> [i]f granted leave to amend, Plaintiffs would allege further facts related to fraud on the part of Defendants.

Yet, Appellants fail to identify any actual facts that they would or could allege that could cure the deficiencies in their claim. Appellants' persistence in conclusory assertion thus further confirms that it was futile to permit additional leave to amend. Appellants' implication that they should have been granted leave to assert a breach of contract claim has no merit. Their allegations do not support any element of a promissory estoppel claim, much less do Appellants explain how their allegations could show the formation of an enforceable contract, that was supported by consideration, and that was not barred by the statute of frauds. *See, e.g., Secrest*, 167 Cal.App.4th at 553.

In sum, the lower court did not abuse its discretion in denying further leave to amend, and Appellants have failed to show otherwise. *See DCD Programs, Ltd.*, 833 F.2d at 186.

## C.   The District Court Did Not Abuse Its Discretion in Denying Appellants' Ex Parte Request to File an Untimely Opposition.

 Rule 6(b)(1)(B) provides that a court may, for good cause, accept a late filing when the failure to meet the deadline was the result of "excusable neglect." The lower court's denial of a request under Rule 6(b) is reviewed for abuse of

discretion.  *See Kyle*, 28 F.3d at 930.

In assessing Appellants' excusable neglect claim, the district court applied the analysis set forth by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  That analysis consists of a four-part test that takes "account of all relevant circumstances surrounding the party's omission" including "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.  The *Pioneer* excusable neglect analysis applies to Rule 6(b).  *See Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 (9th Cir.1996).

As discussed below, Appellants fail to establish that the lower court's application of the *Pioneer* factors was illogical, implausible, or without support in the record.  *See Lemoge v. United States*, 587 F.3d 1188, 1192 & fn. 2. (9th Cir.2009.)

    1.    <u>The District Court Properly Applied the *Pioneer* Factors and Found That Appellants Failed to Demonstrate Excusable Neglect.</u>

        a.    <u>The Cause For Delay Factor Weighs Heavily Against a Finding of Excusable Neglect As Appellants Failed to Explain Their Failure to File an Opposition Prior to the Hearing.</u>

To evaluate whether there was "excusable neglect," the district court was to consider "the reason for the delay, including whether it was within the reasonable

control of the movant." *Pioneer*, 507 U.S. at 395. Appellants were thus required to explain why they failed to file a timely opposition in advance of the September 28, 2012 hearing. On this issue, Appellants state only that, "Mr. Montgomery had been with the United Law Center for only two months prior, he was not aware of the calendaring system, so the situation was largely out of his control." (OB 10.) This argument is insufficient and inconsistent with the record, as discussed below.

i.     Appellants Offered No Explanation Why the Seven Individuals Who Received Notice Failed to Properly Calendar the Motion.

The Notice of Electronic Filing for Appellees' motion to dismiss shows that on August 23, 2012 notice of the motion was electronically mailed to the following recipients at Appellants' counsel's law office:

jsargetis@unitedlawcenter.com,

csims@unitedlawcenter.com,

dmatthews@unitedlawcenter.com,

jgustavson@unitedlawcenter.com,

lmezzetta@unitedlawcenter.com,

pconti@unitedlawcenter.com and

tlevitt@unitedlawcenter.com.

(Notice of Electronic Filing For Docket No. 44; *see also* SER 25; SER 12-13.) At least seven attorneys or staff members from the United Law Center received

45

electronic notice of the motion, including Appellants' lead attorney John Sargetis. (*See id.*; *see also* ER 201.)  Appellants failed to explain why all seven individuals that received this notice failed to calendar the motion.  (ER 70-82.)  This militates strongly against a finding of excusable neglect.

> ### ii.     Appellants Fail to Explain Why Mr. Montgomery Failed to Add His E-Mail Address to the Electronic Notice List.

Eastern District Local Rule 135(g) requires all attorneys practicing in the District to complete e-filing registration.  The First Amended Complaint filed on August 6, 2012 listed attorneys John Sargetis and Myles Montgomery as counsel for Appellants. (ER 201.)  Appellants fail to explain why Mr. Montgomery did not add his email address to the e-filing system after he became an attorney of record.

> ### iii.     Appellants' Jointly Filed Case Management Statement Showed That They Were In Fact Aware of the September 28, 2012 Motion to Dismiss Hearing.

On September 14, 2012, Mr. Montgomery signed a Joint Case Management Statement that specifically identified the motion to dismiss and the September 28, 2012 hearing date.  (SER 16 at lines 11-14.)  It includes the following paragraph:

**4. MOTIONS**

Defendants filed a Motion to Dismiss Plaintiffs' FAC on August 23, 2012. The Motion to Dismiss hearing is scheduled for September 28, 2012. The Parties reserve the right to file any additional motions if necessary.

(*Id.*)  The Case Management Statement contains an electronic signature for Myles

Montgomery.  (*Id.*)  Thus, Mr. Montgomery had notice of the motion hearing as of at least September 14, 2012, despite Appellants' claim to the contrary.

### iv.  Appellants' Failure to Promptly Request Relief.

Appellants claim that it was on September 26, 2012 that they first learned of the September 28, 2012 hearing.  (ER 71 at ¶ 6.)  However, Appellants did not request leave to file an untimely opposition until October 10, 2012, fourteen days after they purportedly first learned of the hearing and the fact that the court had taken the motion under submission.  Appellants fail to explain why they waited two weeks before seeking relief.  This additional lengthy delay suggests knowing disregard for court deadlines rather than excusable neglect.

### b.  The Record Did Not Establish Good Faith.

Appellants' failure to explain the portions of the record that show they knew of the motion in advance of September 26, 2012 suggests a lack of candor, as does their subsequent fourteen-day delay in seeking relief.  In any event, consideration of their opposition would not have altered the ruling on the motion and Appellants argue nothing to indicate otherwise.  Their "Standard of Review" section set forth legal standards applicable to demurrers in California state court, as opposed to the applicable standards under Rule 12(b)(6).  (ER 84-85.)  Even when sitting in diversity, federal courts apply federal procedural law.  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir.2003).

   c.     The Length of the Delay and Its Impact on the Proceedings.

According to Appellants – but contradicted by other indisputable facts before the court – it was not until the court took the motion under submission on September 26, 2012 that they first learned of the September 28, 2012 hearing date. By failing to take any action until October 10, 2012, Appellants guaranteed the district court would undertake the time and expense of adjudicating the motion based on the record before the court when the motion was taken under submission. Thus, the factors of length of the delay and its impact on district court proceedings weigh against Appellants. *See Pioneer*, 507 U.S. at 395.

   d.     Appellants Fail to Show They Sustained Actual Prejudice From the Denial of Their Ex Parte Application.

Although not an "explicit" factor, prejudice to the movant should be considered when appropriate. *Lemoge*, 578 F.3d at 1195. The district court's November 14, 2012 order did not summarily grant the motion as unopposed. (ER 51-63.) The order analyzed the factual allegations with respect to each claim under the applicable law, and stated the reasons each claim failed. (*Id.*) The Opening Brief does not identify any argument or authority in the opposition. Appellants' failure to demonstrate how consideration of their opposition would have affected the outcome weighs against them under this "optional" *Pioneer* factor.

///

48

e.    <u>Danger of Prejudice to Appellees.</u>

The district court found that Appellants' untimely request to file a late opposition would deny Appellees "prompt resolution of their motion, which is clearly prejudicial." (ER 68.)  This consideration should be accorded greater weight given that Appellants failed to seek relief for fourteen days after the motion was taken under submission.

Further, any delay in resolution caused Appellees prejudice because Appellants admit they stopped repaying the Loan in 2011.  Appellees have not exercised their non-judicial foreclosure rights in deference to the litigation process. (*See* SER 24 lines 4-12; Docket No. 65 at p. 5:11-21.)  The longer this litigation persisted, the greater the prejudice because Appellants retain the security without repaying the Loan.

## D.    **In the Alternative, the District Court's Denial of Appellants' *Ex Parte* Application Was Not Prejudicial.**

Irrespective of whether the lower court erred, this Court will affirm if the error was harmless.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir.2012). The burden of demonstrating prejudicial error is on the party claiming error, who must show that the identified error affected the outcome being challenged on appeal.  *Id*.

As discussed above, the district court did not summarily grant the motion as unopposed.  (ER 51-63.)  Instead, the court issued a detailed thirteen-page order

that analyzed under the applicable law the factual allegations with respect to each claim. (*Id.*)  Appellants fail to present argument that consideration of their opposition would have affected the district court's decision, and as noted, the opposition did not cite federal standards for disposition of the motion.  Finally, this brief has shown that each claim in the First Amended Complaint suffered from multiple legal defects, among them Appellants' persistent failure to identify legally cognizable damages.

Even if the lower court erred in not granting Appellants' *ex parte* application, it was not prejudicial because the same result would have obtained if the opposition had been considered.  The judgment should be affirmed because the purported error was harmless in any event.  *See Ludwig*, 681 F.3d at 1054.

///

50

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRYAN CAVE LLP
Daniel Rockey
Joseph J. Poppen

August 1, 2013

/s/ Joseph J. Poppen
Joseph J. Poppen
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, California  94105

Attorneys for Appellees JPMORGAN
CHASE BANK, N.A., individually and as
successor by merger to CHASE HOME
FINANCE LLC.; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; FEDERAL HOME
LOAN MORTGAGE CORPORATION;
and DEUTSCHE BANK NATIONAL
TRUST COMPANY

51

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because it contains 11,258 words, excluding the

parts of the brief exempted by Federal Rule of Appellate Procedure

32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally

spaced typeface, 14-point Times New Roman, using Microsoft Word 2010.


August 1, 2013                    /s/ Joseph J. Poppen
                                  Joseph J. Poppen
                                  Bryan Cave LLP
                                  560 Mission Street, 25th Floor
                                  San Francisco, California  94105

                                  Attorneys for Appellees JPMORGAN
                                  CHASE BANK, N.A., individually and as
                                  successor by merger to CHASE HOME
                                  FINANCE LLC.; MORTGAGE
                                  ELECTRONIC REGISTRATION
                                  SYSTEMS, INC.; FEDERAL HOME
                                  LOAN MORTGAGE CORPORATION;
                                  and DEUTSCHE BANK NATIONAL
                                  TRUST COMPANY

SF01DOCS\150819

## <u>STATEMENT OF RELATED CASES</u>

Appellees JPMorgan Chase Bank, N.A., individually and as successor by merger to Chase Home finance LLC, Mortgage Electronic Registration Systems, Inc., Federal Home Loan Mortgage Corporation, and Deutsche Bank National Trust Company are not aware of any cases in this Court that are related to this case.

BRYAN CAVE LLP
Daniel Rockey
Joseph J. Poppen

/s/ Joseph J. Poppen
Joseph J. Poppen
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, California  94105
(415) 675-3400

Attorneys for Appellees JPMORGAN CHASE BANK, N.A., individually and as successor by merger to CHASE HOME FINANCE LLC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; FEDERAL HOME LOAN MORTGAGE CORPORATION; and DEUTSCHE BANK NATIONAL TRUST COMPANY

SF01DOCS\150819

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this Answering Brief of Appellees JPMorgan Chase Bank, N.A., individually and as successor by merger to Chase Home finance LLC, Mortgage Electronic Registration Systems, Inc., Federal Home Loan Mortgage Corporation, and Deutsche Bank National Trust Company with the Clerk of the United States Court of Appeals for the Ninth Circuit for filing by using the appellate CM/ECF system on August 1, 2013.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

BRYAN CAVE LLP


/s/ Linda Johnston Barry

SF01DOCS\150819